## Litteral v. Woods, Judge.

(Decided March 16, 1928.)

### Petition for Writ of Prohibition.

1. Prohibition.—For Supreme Court to exercise original jurisdiction, under Constitution, sec. 110, by writ of prohibition over inferior court having jurisidiction, but proceeding erroneously, there must be not only an erroneous exercise of jurisdiction by the inferior court and no adequate remedy by appeal, but there must also be the element of great and irreparable injury, damage, or injustice.

2. Prohibition.—Where, in action in quarterly court for recovery of $175, defendant though present by counsel permitted judgment in nature of default to be rendered in favor of plaintiff for full amount sued for and then appeal to circuit court, held, that Supreme Court will not grant writ of prohibition, under Constitution, sec. 110, to prohibit circuit court from entertaining appeal, since, though circuit court may be proceeding erroneously within its jurisdiction, there is no great and irreparable injury to plaintiff authorizing Supreme Court to exercise its original jurisdiction.

JAMES B. ADAMSON and CHARLES PRATER for plaintiff.

BROWNING & REED for defendant.

OPINION BY JUDGE THOMAS—Denying writ of prohibition.

This is an original action filed in this court by plaintiff, Wiley Litteral, against defendant H. L. Woods, judge of the Boyd circuit court, by which the former seeks a mandatory order against the latter requiring him to sus-

tain plaintiff's motion made in that court to dismiss the appeal filed therein by the Chesapeake & Ohio Railway Company from a judgment rendered against it in the Boyd quarterly court in favor of plaintiff herein for the sum of $175. The motion made before defendant in the circuit court to dismiss the appeal from the judgment in the quarterly court is bottomed upon these facts:

Plaintiff herein filed his action against the railway company in the Boyd quarterly court seeking to recover from it the sum of $175 as damages for the alleged killing of a horse belonging to plaintiff by one of the company's trains, and which was averred to have been negligently done. On the day the cause was set for trial in the quarterly court defendant in that case was present by counsel, but filed no answer, and judgment in the nature of a default one was rendered in favor of plaintiff for the full amount sued for. The judgment rendered by the quarterly court, a copy of which was filed with the papers on appeal to the circuit court as is required by the Civil Code of Practice, recites:

> "Then came the defendant by their attorney, Clifford Smith, and failed to plead to said petition, but agreed in open court that judgment should go against the defendant, and the court after being sufficiently advised sustained said motion and consented to said agreement,"

—whereupon judgment was rendered as stated. The motion made in the circuit court to dismiss the appeal prosecuted thereto was bottomed upon the fact that the quarterly court judgment, being one by agreement and consent of defendant through and by its counsel, no appeal could be prosecuted by it to the Boyd circuit court; and in support of that contention reliance is had upon the cases of Duncan v. Louisville, 13 Bush, 378, 26 Am. Rep. 201; Taylor v. Slider, 185 Ky. 756, 215 S. W. 827; Staverson v. Kentucky Utilities Co., 216 Ky. 309, 287 S. W. 890, and Commonwealth v. Helm, 163 Ky. 69, 173 S. W. 389—the last two of which were appeals from judgments of courts presided over by the county judge to the circuit court, while the others were appeals from the latter court to this court.

In the one case the trial by the appellate court is a de novo one, while in the other one (an appeal from the circuit court to this court) the hearing in the appellate court is only a reviewing one. Whether the general rule

of practice forbidding appeals from consent judgments would apply as strictly where the trial on appeal is a de novo one need not be determined by us, and upon which we at this time express no opinion. The reason for that statement is that in both the Staverson and Helm cases (which as stated were appeals to a de novo trial court) the judgments appealed from were clearly shown to be compromising in their nature, and involved agreements of settlement of the matters involved in the particular litigations. Clearly, in such cases it would be manifestly unjust and improper to permit a repudiation of such an agreement through the avenue of appeal, the agreement being a waiver of all errors. Whether the order embodied in the judgment of the Boyd quarterly court, and here involved, is sufficient to show such a compromising agreement will not be discussed or determined by us for the reasons hereinafter stated.

The authority for the relief sought by this original action in this court, if it exists at all, is to be found in the provisions of section 110 of the Constitution, in which it is said with reference to original jurisdiction of this court:

> "Said court shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions."

We have been unable to find in any state Constitution such broadly conferred, or what might be termed "blanket," authority in the exercise of original jurisdiction of strictly appellate and reviewing courts. For awhile after the adoption of our present Constitution this court declined to construe the inserted excerpt from its section 110 as giving original jurisdiction to this court of any control over inferior ones where they were proceeding *within* their jurisdiction and which was in conformity with, and by analogy to, the definition of a writ of prohibition contained in section 479 of the Civil Code of Practice, defining the authority as it may be exercised by *circuit* courts against those inferior to it, and it gave to the former jurisdiction to prohibit the latter "from proceeding in a manner out of its jurisdiction." A case illustrating such first interpretation of section 110 of the Constitution by this court is that of Standard Oil Co. v. Linn, 32 S. W. 932, 17 Ky. Law Rep. 833.

Latterly we have by interpretation extended our authority to issue controlling writs to inferior courts

(under the provisions of the section of the Constitution, supra) to cases not only where they are proceeding without jurisdiction, but also to cases where they are proceeding to exercise their jurisdiction erroneously, resulting in great and irreparable injury to the applicant, and without any remedy open to him by appeal or otherwise. Cases so enlarging our authority to include those where "great and irreparable injury" would result without an adequate remedy, although the inferior court was acting within its jurisdiction but erroneously, are Natural Gas Products Co. v. Thurman, 205 Ky. 100, 265 S. W. 475, Duffin v. Field, Judge, 208 Ky. 543, 271 S. W. 596, and others referred to in those opinions, and also still later ones. However, we have steadfastly adhered to the law, as everywhere declared, that without the element of "great injustice," "great and irreparable injury," "irreparable injury," or some such expression embodying the same idea, our original jurisdiction would not be exercised where the inferior court was proceeding within its jurisdiction, although erroneously and without the right of appeal or other remedy. 22 R. C. L. 23, par. 22; Carey v. Sampson, Judge, 150 Ky. 460, 150 S. W. 531; Ohio River Contract Co. v. Gordon, 170 Ky. 419, 186 S. W. 178; Rallihan v. Gordon, 176 Ky. 471, 195 S. W. 783; Gilman v. Doak, 194 Ky. 21, 237 S. W. 1069; McLaughlin v. Barr, 191 Ky. 346, 230 S. W. 304, and cases found in those opinions.

In the Duffin opinion we defined our interpretation of original jurisdiction under the constitutional section thus:

"That construction (of section 110) is, that we will prohibit inferior courts in all cases where, (1) they are threatening to proceed, or are proceeding, in a matter of which they have no jurisdiction and there is no remedy through an application to an intermediate court, and (2) where they, although possessing jurisdiction, are exercising or about to exercise it erroneously *and* great injustice and irreparable injury would result to the applicant if they should do so, and there exists no other adequate remedy by appeal or otherwise. Western Oil Refining Co. v. Wells, 180 Ky. 32 (201 S. W. 473); Natural Gas Products Co. v. Thurman, Judge, 205 Ky. 100 265 S. W. 475); Tompkins v. Manning, Judge, 205 Ky. 327 (265 S. W. 830); Fleece v. Shackelford, 204

Ky. 841 (265 S. W. 460), and many other cases referred to in those opinions.'' (The emphasis is as it appears in the excerpt.)

In the Thurman opinion we pointed out our departure from the holding in the case of Standard Oil Co. v. Linn, supra, and said that:

"Since the rendition of that opinion, we have had before us a number of applications of this kind, invoking our authority under the section of the Constitution referred to, and have invariably held, as against circuit judges as well as judges of courts inferior thereto, that an appropriate writ will issue, not only in cases where the court is about to proceed or is proceeding beyond its jurisdiction, but it will also issue when the court is proceeding or threatening to proceed within its jurisdiction but in such a manner as to produce great and irreparable injury 'and against the results of which he (the petitioner)' has no adequate remedy, other than the writ of prohibition.' Ohio River Contract Co. v. Gordon, 170 Ky. 412 (186 S. W. 178), and a long list of cases from this court cited on pages 419 and 420. In the case of Prison Commissioners v. Crumbaugh, 161 Ky. 540 (170 S. W. 1187), it is also said that 'It is well settled that a writ of prohibition may issue in a case like this whenever the inferior court is proceeding out of its jurisdiction, or where it has jurisdiction, but an appeal will not furnish an adequate remedy or there is no other remedy,' which, of course, must be read in connection with statements in many of our opinions that, 'great and irreparable injury will result to the petitioner unless the writ is granted.' ''

It will therefore be observed that one of the bases of jurisdiction in this court, where the inferior one has jurisdiction but is proceeding erroneously, is that great and irreparable injury will result to the petitioner unless the writ be granted. Having evolved that basis by interpretation, it is clearly within our province to define it, and which has been done, in effect, by the latter class of our opinions; at least by implication if not expressly so. We have seen that the fact of erroneous exercise of jurisdiction *alone*, although no correcting remedy exists, will not of itself authorize the issuing of the writ. There

must be added to that situation the further element of "great and irreparable" injury, damage, or injustice.

If the contention of plaintiff in this case should be followed and the relief for which he prays be granted, then in every case where an inferior court to this one was about to render an erroneous opinion his action could be controlled by the proper writ from this court issued in an original application therefor, and thus the law relating to the granting of appeals, and limiting our jurisdiction thereof, would become effectually repealed and set aside, since it is clearly apparent that no substantial distinction can be drawn between an erroneous ruling of a court inferior to this one, on a matter within its jurisdiction, upon an application to dismiss an appeal from the quarterly court, and an erroneous ruling by such inferior court upon a demurrer, the admission or rejection of testimony, the overruling or sustaining a motion for a new trial, the giving or refusing to give instructions, or any other action that may be taken during the progress of a trial. Since, therefore, this court has construed the section of the Constitution to give the authority to entertain such an original application under the last-stated conditions, i. e., when "great and irreparable injustice or injury would result," it becomes necessary to determine the boundaries and limits of that ground for the exercise of our original jurisdiction in that class of cases.

To begin with all of the cases of the type and class of the Carey opinion, and wherein the writ was refused by us, it was determined, by implication at least, that no great or irreparable injury, within the sense employed in our present interpretation, existed; otherwise those opinions would have been different. In cases of the type of the Thurman opinion wherein that element was the controlling one, incalculable injury or damage to the applicant was involved, either to the liberty of his person, or to his property rights, or other far-reaching and conjectural consequences. In defining similar phraseology, the court in the case of Phipps v. Rogue River Canal Co., 80 Or. 175, 156 P. 794, 7 A. L. R. 741, said:

> "The infliction of 'irreparable injury,' such as a court of equity will enjoin, includes also that degree of wrongs of a repeated or continuing kind which produce hurt, inconvenience or damage that can be estimated only by conjecture, and not by any accurate standard of measurement. 29 Cyc. 1224;

Bernard v. Willamette Box & L. Co., 64 Or. 225, 129 P. 1039.''

The text in 14 R. C. L. 345, par. 47, in defining the jurisdiction of courts in the granting of injunctions (another extraordinary and preventive remedy) upon the same ground, of ''great and irreparable'' injury, as applied to the construction of public utilities and improvements, says that:

> ''Courts do not enjoin the construction or use of public utilities and improvements at the suit of private individuals unless the damage is both serious in amount and irreparable in character.''

In also discussing the grounds for the granting of an injunction upon the same ground, the text in 32 C. J. 55, sec. 35, says that the preventive writ should issue ''where the consummation of a wrongful or illegal act will probably result in many disputed claims and many actions at law against complainant.''

In the Rallihan case, supra, from this court, the circuit court that was sought to be prohibited had jurisdiction of the subject-matter, but it was claimed that he was proceeding erroneously. The writ, however, was denied by us, and in referring to the case of Board of Prison Commissioners v. Crumbaugh, supra, wherein the writ was granted, the reason for it, as stated in the Rallihan opinion, was that the Crumbaugh case ''was a very extraordinary case.'' In the Doak opinion the case of Ohio River Construction Co. v. Gordon, supra, was referred to, and it was said therein (Doak opinion) ''that the granting of a writ of prohibition under section 110 of the Constitution is never warranted save in exceptional or unusual cases''; an illustration of which is to be found in the Thurman case where a large and lucrative business was about to be absolutely destroyed because of the erroneous ruling of the court that was sought to be prohibited. The writ was granted therein because of that fact alone, and there are other imaginable states of circumstances where, under the discretion lodged with us under section 110 of the Constitution, the power conferred thereby could be exercised so as to prevent the great and irreparable injury that would result if the writ should be denied. That discretion, however, as clearly indicated by our opinions, supra, will not be exercised in favor of granting the writ so as to supply the absence of a right

of an appeal to this court and to thereby nullify the statutes fixing such right. Nor will we, by that indirect method, assume jurisdiction to correct all interlocutory erroneous rulings of inferior courts, unless the case presents extraordinary and unusual conditions as were present in the cases, supra, and wherein we exercised such jurisdiction upon the sole ground that such erroneous rulings of the inferior court would result in *great* and *irreparable* injury to the applicant within the scope and meaning hereinbefore pointed out. It is, therefore, manifest that to a large extent each case must rest upon its own particular and peculiar facts, and from which it conclusively appears that such injuries result, as a basis for the writ. It is sufficient to say that in this case the plaintiff, by the erroneous ruling complained of, might sustain the loss of a judgment for a small amount of money, but it is not such great and irreparable injury as above outlined so as to call for the exercise of the jurisdiction asked by this original action.

Wherefore the demurrer filed to the petition is sustained, and it is dismissed, and the motion for the writ is denied.